Filed 1/29/26  Portis v. City of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARCUS D. PORTIS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES et al.,<br><br>Defendants and Respondents. | B338764<br><br>(Los Angeles County<br>Super. Ct. No. 23STCP01739) |

APPEAL from the judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed

Law Offices of Gregory G. Yacoubian and Gregory G. Yacoubian for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Vivienne A. Swanigan, Assistant City Attorney, Erika Johnson-Brooks and Travis T. Hall, Deputy City Attorneys for Defendants and Respondents.

_____

Marcus Portis, a former firefighter employed by the Los Angeles City Fire Department (the Department), was terminated for violating Department rules by engaging in revenge pornography and acts of vandalism against a private individual. Portis petitioned the superior court for a writ of mandate against the City of Los Angeles (the City) and Kristin Crowley, the Department Fire Chief, alleging various procedural violations leading to his termination. The trial court denied the petition.

Portis contends his termination was unlawful because the personnel complaint against him was not verified personally by the fire chief; the complaint was barred by the applicable limitations period; and the Department violated his Seventh Amendment right to a jury trial. We disagree with each contention and affirm.

## BACKGROUND

Portis challenges only procedural aspects of his termination.

On June 23, 2021, police notified the Department that Portis had been criminally charged with engaging in revenge pornography against C.C. The Department investigated and learned that in September 2020, C.C. reported to police that Portis broke the windows on and poured orange paint into her car. On October 6, 2021, the Department interviewed Portis, who admitted to vandalizing C.C.'s vehicle and engaging in revenge pornography against her.

On November 19, 2021, the Department charged Portis with one count of vandalizing C.C.'s car with paint, one count of slashing her tires, and one count of posting sexually explicit videos of C.C. on pornographic websites without her consent.

On December 9, 2021, Deputy Chief Stephen L. Gutierrez prepared and verified a formal complaint, set forth on "Form

2

F-501," thereby declaring under penalty of perjury that the allegations were true.

Also on December 9, 2021, then Fire Chief Ralph M. Terrazas executed "Form F-223," thereby reporting to the Board of Fire Commissioners for the City of Los Angeles (Fire Commission) that Portis was to "go before a Board of Rights on charges preferred by Deputy Chief . . . Gutierrez." Fire Chief Terrazas also sent the complaint to the Fire Commission.

On December 13, 2021, after two attempts at personal service, the Department sent Portis the complaint by registered mail, along with a notice of discharge, suspension, or probationary termination.

On February 27, 2023, the Department amended the complaint to correct a typographical error concerning the date listed for one of the vandalism counts: An allegation that Portis slashed C.C.'s tires on "November 18, 2020[,] [sic] to December 13, 2019, inclusive" was changed to reflect that the vandalism occurred "on or about December 13, 2019." Assistant Chief Kristina Kepner verified the amended complaint. The Department served the amended complaint on Portis on March 7, 2023, but never served it on the Fire Commission.

On March 16, 2023, a Board of Rights was convened, and Portis entered a plea of not guilty and moved to dismiss the complaint on the grounds that it was barred by the applicable limitations period and was not personally verified by the fire chief. The Board of Rights denied the motion, held a hearing, found Portis guilty on all three charges, and removed him from his employment effective March 7, 2023.

Portis petitioned the superior court for a writ of mandate pursuant to Code of Civil Procedure section 1094.5, arguing his termination was unlawful because the Department's complaint

3

was time-barred and had not been personally verified by the fire chief.

The trial court denied the petition and entered judgment accordingly.  Portis appealed.

## DISCUSSION

### A.     Standard of Review

A writ of mandate will issue "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station."  (Code Civ. Proc., § 1085, subd. (a).)  Where the writ inquires into the validity of a final administrative decision made as the result of a proceeding in which an evidentiary hearing is required, "the case shall be heard by the court sitting without a jury."  (*Id*., § 1094.5, subd. (a).)  "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (*Id.,* § 1094.5, subd. (b).)

In reviewing a trial court's judgment on a petition for a writ of mandate, we review de novo the application of the law to undisputed facts.  (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 280.)

### B.     The Administrative Complaint Was Properly Verified

Portis contends the complaint against him was invalid because it was not personally verified by Fire Chief Terrazas, as Portis argues is required by the City of Los Angeles Charter (the Charter).  We disagree.

4

The Charter provides that "[i]n the event any order of relief from duty or suspension is made, the order shall contain a statement of the charges assigned as causes. . . .  The complaint shall be verified by the oath of the Fire Chief and shall contain a statement in clear and concise language of all the facts constituting the charge or charges."  (L.A. City Charter, § 1060(c).)  "The Fire Chief shall, within five days after the [discipline] order is served as provided in subsection (d), file with the Board of Fire Commissioners, a copy of a verified written complaint upon which the order is based, with a statement that a copy of the order and verified complaint was served upon the accused."  (L.A. City Charter, § 1060(c).)

The Charter does not prohibit the fire chief from delegating his or her responsibilities to Department employees.  On the contrary, the Charter designates the fire chief as the Department's chief administrative officer and grants him or her broad power to administer Department affairs, appoint employees, and issue instructions to employees in the line of their duties.  (L.A. City Charter, §§ 509, 522.)  The power to administer Department affairs and issue instructions includes the power to delegate responsibility to verify complaints as part of the Department's disciplinary procedures.

Here, Fire Chief Terrazas delegated the complaint to Deputy Chief Gutierrez.  Once the Department completed its disciplinary investigation, it presented the complaint to Fire Chief Terrazas, who confirmed it with his signature on "Form F-223" and transmitted it to the Fire Commission.  This procedure complied with section 1060(c) of the City of Los Angeles Charter.

To hold otherwise would require the fire chief to have personal knowledge about the charges in every complaint, which the fire chief could not reasonably be expected to possess

5

considering all the other responsibilities the Charter imposes on him or her, and would prevent the Department from charging an employee with misconduct when the fire chief is incapacitated, absent, or otherwise unavailable to sign a complaint. We decline to interpret the City of Los Angeles Charter section 1060(c) in such a way as to lead to this result.

### C. The Administrative Complaint Was Timely

Portis contends the charges filed against him were untimely under the Charter. We disagree.

Disciplinary charges against a Department employee "must be filed within one year of the Department's discovery of the act committed or omitted by a member and in no event later than two years from the date of the act or omission." (L.A. City Charter, § 1060(a).)

Here, the Department discovered Portis's misconduct when police reported it on June 23, 2021. The Department filed charges against Portis on December 9, 2021, and served the complaint on him by certified mail on December 13, 2021. This filing and service occurred well within one year of the Department's discovery of Portis's misconduct.

Portis argues the operative *amended* complaint was untimely because it was not served on him until March 7, 2023, more than two years after the Department discovered his misconduct. We disagree.

" 'Where the statute of limitations has expired before the filing of an amended complaint, unless an amended complaint relates back to a timely filed original complaint, the amended complaint will be time-barred. [Citations.] Under the relation-back doctrine, to avoid the statute of limitations bar, the amended complaint must allege the same general set of facts, refer to the

6

same accident, same injuries, and refer to the same instrumentality as alleged in the original complaint.' " (*Fix the City, Inc. v. City of Los Angeles* (2024) 100 Cal.App.5th 363, 374.) The relation-back doctrine requires courts to compare the factual allegations in the original and amended complaints. (*Id*. at pp. 374–375.)

Here, the original and amended complaints arose out of the same set of facts, differing only in the date Portis allegedly slashed C.C.'s tires. Accordingly, the amended complaint relates back to the original complaint and was not time-barred.

Portis argues, without citing authority, that application of the relation-back doctrine would be unfair because the court relied on the doctrine sua sponte, giving Portis no opportunity to present contrary authority or develop a factual record relevant to the theory. On the contrary, the facts upon which the doctrine is based were fully briefed by the parties and established both how and when the original complaint was amended. In any case, Portis made those arguments here and we have considered them on the merits.

Portis argues that service of the amended complaint on the Fire Commission was a condition precedent to considering application of the relation-back doctrine. We disagree. The Fire Commission plays no active role in employment disciplinary proceedings, which are within the exclusive purview of the fire chief. (See L.A. City Charter, § 510(c) [head of a department shall "appoint, discharge, suspend or transfer all employees of the department"].) The Fire Commission is empowered only to "audit, assess and review the Fire Department's handling of complaints of misconduct committed by employees." (L.A. City Charter, § 523(a); see also *id*., §§ 510(f) [department head provides information as requested by the board], 510(*i*) [department head reports to the board on the work of the department on a regular basis].) Because

7

the fire chief reports a complaint of employee misconduct to the Fire Commission only for purposes of review and evaluation, any deficiency in the report arising from failure to provide the latest amended complaint is irrelevant to prosecution of the complaint itself.

Portis argues that the Charter's limitations periods must be strictly construed, which precludes application of the relation-back doctrine. We disagree. A limitations period must be construed so as to put an employee on notice of the need to defend against a claim in time to prepare a fair defense. (See *Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 940.) This policy is satisfied when discipline under an amended complaint is imposed on the same basic set of facts as the original complaint. (See *ibid*.) Here, the two complaints were based on the *same* facts: The original complaint alleged that Portis slashed C.C.'s tires on "November 18, 2020[,] to December 13, 2019, inclusive," and the amended complaint alleged that Portis slashed C.C.'s tires on "December 13, 2019." The amended complaint thus only narrowed the conduct to a specific date within the range of the original complaint.

### D. The Seventh Amendment Does Not Require a Jury Trial

Relying on *Securities and Exchange Commission v. Jarkesy* (2024) 603 U.S. 109 (*Jarkesy*), Portis argues that the Department's proceedings violated his Seventh Amendment right to a jury trial.

There, the court held that the Seventh Amendment of the federal Constitution guarantees the right to trial by jury to a civil trial that was "legal in nature." (*Jarkesy, supra*, 603 U.S. at p. 122.) The court held that the civil penalties prescribed by federal securities laws and imposed in administrative proceedings by the Securities and Exchange Commission are designed to punish and

8

deter, not to compensate, and are thus legal in nature. (*Id*. at p. 125.) Portis argues that under *Jarkesy*, any civil penalty imposed under a disciplinary scheme designed to punish and deter, not to compensate, is legal in nature, and thus requires trial by a jury.

We need not determine whether Portis correctly interprets *Jarkesy* because the Seventh Amendment does not apply to state civil actions. (*County of El Dorado v. Schneider* (1987) 191 Cal.App.3d 1263, 1271.)

It is the California Constitution that guarantees the right to trial by jury in a civil case. (Cal. Const., art. I, § 16.) "From the outset of our state's history, our courts have explained that this provision was intended to preserve the right to a civil jury as it existed at common law in 1850 when the jury trial provision was first incorporated into the California Constitution." (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 315.) "Pursuant to this historical approach, as a general matter the California Constitution affords a right to a jury trial in common law actions at law that were triable by a jury in 1850, but not in suits in equity that were not triable by a jury in 1850." (*Nationwide Biweekly Administration, supra,* at p. 315.)

Here, Portis does not contend that an administrative procedure regarding public employment was triable by a jury in 1850. We thus do not address the issue further.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.

10